# In the United States Court of Federal Claims

No. 16-1121C
Filed July 10, 2017

| | |
|---|---|
| JEFFREY BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Disability Retirement Compensation, 10 U.S.C. § 1201; Disability Separation Compensation, 10 U.S.C. § 1203; RCFC 52.1.

*Jason Ellis Perry*, Counsel of Record, Law Office of Jason Perry LLC, Wellington, FL, for plaintiff.

*Michael D. Snyder*, Trial Attorney, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; and *Captain Christopher J. Koschnitzky*, Of Counsel, U.S. Army Litigation Division, Fort Belvoir, VA.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.   INTRODUCTION

Plaintiff, Jeffrey Brown, challenges the decisions of the Army Board for Correction of Military Records (the "ABCMR") to deny his request for disability compensation under 10 U.S.C. §§ 1201 and 1203. The parties have filed cross-motions for judgment upon the administrative record, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims. For the reasons set forth below, the Court **GRANTS** the government's motion for

judgment upon the administrative record and **DENIES** plaintiff's cross-motion for judgment upon the administrative record.[1]

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background[2]

Plaintiff, Jeffrey Brown, enlisted as an active duty service member in the United States Army (the "Army") on August 22, 1984.  AR at 40.  During his active duty service, plaintiff suffered seizures and other health issues, and he was at times noncompliant with the Army's height and weight requirements.  *See* AR at 95, 104, 115, 120, 199-201, 353.  Plaintiff was honorably discharged from the Army on August 21, 2000.  AR at 40.

In 2014, plaintiff petitioned the Army Board for Correction of Military Records to correct his military records and to present the records to a medical examination board ("MEB").  AR at 450-52.  Plaintiff asserted in his application that he had seizures and that his inability to reenlist, due to noncompliance with military height and weight requirements at the time of his discharge, caused him to suffer from anxiety, depression and post-traumatic stress disorder.  AR at 451. The ABCMR denied plaintiff's application and his subsequent request for reconsideration of the ABCMR's denial decision, on October 9, 2014 and April 12, 2016, respectively.  AR at 5-17, 445-49.

#### 1.  Plaintiff's Medical History

During his active duty service, plaintiff was treated for, among other things, inguinal hernias, seizures and a dislocated shoulder.  With respect to plaintiff's hernias, plaintiff had surgery to correct an inguinal hernia in October 1985.  AR 63-64, 67, 797.  From December 18, 1985 to December 24, 1985, plaintiff was also hospitalized to receive treatment for an inguinal hernia.  AR at 70.

---

[1] On March 31, 2017, the government withdrew its motion to dismiss plaintiff's claim that the ABCMR erred by not addressing plaintiff's allegation that he suffered an injustice by not being able to reenlist in the Army, because plaintiff is not asserting such a claim in this litigation.  Def. Reply at 4; Pl. Mot. at 4-5.

[2] The facts recited in this Memorandum Opinion and Order are taken from plaintiff's complaint ("Compl."); the administrative record ("AR"); the government's motion for judgment upon the administrative record ("Def. Mot."); and plaintiff's cross-motion for judgment upon the administrative record.  Except where otherwise noted, the facts recited herein are undisputed.

In October 1986, plaintiff had a second surgery to treat an inguinal hernia.  AR at 77-78, 795-96.  On April 21, 1999, plaintiff underwent a third inguinal hernia operation.  AR at 207.  After each of these surgeries, plaintiff was placed on convalescent leave, a temporary profile, or both.  AR at 67, 70, 79, 209.

Plaintiff also experienced seizures and a shoulder injury during his time on active duty.  AR at 161, 265, 403.  Plaintiff had his first seizure in April 1996, resulting in plaintiff dislocating his shoulder.  AR at 161; Compl. ¶ 3.  After the seizure, plaintiff was examined *via* an electroencephalogram ("EEG") and a Magnetic Resonance Imaging ("MRI") scan.  AR at 399.  The EEG read as "abnormal epileptic form," and the MRI read normal.  *Id*.  The examining neurologist noted at that time that he would continue to observe plaintiff on a one-year profile.  *Id*.  In August 1996, plaintiff had a second seizure while on active duty.  AR at 403.  Thereafter, plaintiff was seen by a neurologist who prescribed a daily dosage of 300 milligrams of Dilantin.  *Id*.

In 1997, plaintiff dislocated his shoulder two additional times.  AR at 181-82.  And so, on January 21, 1998, plaintiff had shoulder surgery to correct this issue.  AR at 190.

In 1999, plaintiff failed to meet the Army's height and weight standards, and the Army began involuntary separation proceedings.  AR at 199-201.  On April 14, 1999, as part of this process, plaintiff had a physical, during which he completed a Standard Form 93 ("SF 93").  AR at 199-200.  On the SF 93, plaintiff stated that he "had or currently has" sixteen medical issues, including "rupture/hernia" and "epilepsy or fits."  AR at 199.

Thereafter, the examining physician assistant prepared a Standard Form 88, Report of Medical Examination ("SF 88").  AR at 202.  On the SF 88, plaintiff noted that he had three hernia operations during his time in the military and that he had two seizures in 1996, but that he had not suffered a seizure since that time.  AR at 203.  The physician assistant noted normal findings except for "abdomen and viscera," but the physician assistant did not find this issue to be a "disqualifying defect."  AR at 201-02.  Ultimately, the physician assistant determined that plaintiff was qualified to be involuntarily separated from the Army after a general surgery consult.  AR at 202.

In September 1999, plaintiff passed out while running and fracture several facial bones.  AR at 212.  Along with additional treatment, the Army's neurology clinic conducted a

computerized tomography scan of plaintiff's brain, which revealed "no evidence of hemorrhage, mass, or mass effect." AR at 265.  In February 2000, plaintiff had another seizure, and he was referred to a neurologist.  *Id.*  In March 2000, plaintiff reported to the neurologist that he had experienced multiple seizures since 1996.  *Id.*  The neurologist found that plaintiff "has been taking only 100 mg/[d] [of Dilantin] claiming that he has never been told to increase it to 300 mg/d."  *Id.*

On August 21, 2000, plaintiff's enlistment contract expired prior to any action on his involuntary separation proceedings, and plaintiff was honorably discharged.  AR at 40.  Plaintiff subsequently underwent a medical evaluation by the Army in December 2000.  AR at 223-232.  Plaintiff stated on the intake forms for his physical examination that he had been separated from the Army because he "was enrolled in the Army [sic] Weight Control Program, and unable to reenlist," and that his weight issues were "a direct result of physical limitations resulting from injuries and surgeries while on active duty."  AR at 232.  Plaintiff also stated that he was taking 300 milligrams of Dilantin per day.  AR at 228.  The reviewing health care provider found that, at the time, plaintiff "is maintained [seizure] free with medication."  AR at 229.

### 2.  The ABCMR's Proceedings And Decisions

On December 23, 2013, plaintiff applied to the ABCMR for correction of his military records.  AR at 782.  In his application, plaintiff requested that his "military records be present[ed] to and reviewed by a Medical Review Board," because he "was suffering from an unexplainable Seizure Disorder" while on active duty.  *Id.*  On January 10, 2014, the ABCMR informed plaintiff that the board had unsuccessfully requested plaintiff's military records from the National Archives and Records Administration and that the board was unable to review plaintiff's records in the Interactive Personnel Electronic Records Management System.  AR at 780.  Because the ABCMR could not obtain plaintiff's military records, the board determined that it had insufficient records to proceed with a review.  *Id.*  And so, the ABCMR dismissed plaintiff's petition without prejudice.  AR at 780-81.

On January 27, 2014, plaintiff submitted a second application to the ABCMR requesting that his "military records be presented to . . . a Medical Review Board," because he had suffered from seizures for the final four years of his military service, during the period 1996 to 2000.  AR at 450.  In his application, plaintiff alleged that he suffered from an undiagnosed seizure

condition at the time of his discharge and from an "extreme case of Sleep Apnea" that triggers seizures.  AR at 450-51.  He also asserted that he suffered from anxiety, depression and post-traumatic stress disorder over his separation.  AR at 451.  In support of his application, plaintiff submitted to the ABCMR his initial application for correction of military records and the ABCMR's denial letter; a noncommissioned officer evaluation report ("NCOER") for the period May 1995 through January 1996; certain military medical records; a letter dated January 10, 2014 from the Delta Waves Sleep Disorder and Research Center; three reference letters, excerpts of Army Regulation 40-501 and Army Regulation 635-40; plaintiff's Department of Defense Form 214; and progress notes related to individual psychotherapy dated throughout 2013.  AR at 446, 453-779.

On October 9, 2014, the ABCMR informed plaintiff that the overall merits of plaintiff's case were insufficient as a basis for correction of plaintiff's military records.  AR at 449.  And so, the ABCMR denied plaintiff's claim.  *Id.*

In the ABCMR's denial decision, the ABCMR reviewed the version of Army Regulation 635-40, paragraph 3-1, that was in effect at the time of plaintiff's separation from the Army, which provides that:

> The mere presence of impairment does not, of itself, justify a finding of unfitness because of physical disability.  In each case it is necessary to compare the nature and degree of physical disability present with the requirements of the duties the member reasonably may be expected to perform because of his or her office, rank, grade or rating.

AR at 448; Army Reg. 635-40, 3-1 (Sept. 1, 1990).  In addition, the ABCMR reviewed title 10, United States Code, chapter 61, which addresses disability retirement or separation for a service member who is physically unfit to perform his or her duties.  AR at 448.  Finally, the ABCMR considered title 30, United States Code, sections 310 and 331, which permit the Department of Veterans Affairs to award compensation for a medical condition incurred during or aggravated by military service.  *Id.*

The ABCMR also considered the following evidence in considering plaintiff's claim:  an Army Review Boards Agency letter, dated January 10, 2014; plaintiff's DD Form 149 (Application for Correction of Military Record), dated December 23, 2013; an NCOER for the period May 1995 through January 1996; additional military medical records; a Delta Waves

Sleep Disorder and Research Center letter, dated January 10, 2013; and Progress Notes, dated January to November 2013.  AR at 446, 453-779.

After reviewing this evidence, the ABCMR determined that plaintiff had been treated for vision issues, epileptic seizures, a left shoulder dislocation, and hernias during his military service.  AR at 446-47.  The ABCMR noted, however, that "[t]here is no record [plaintiff] was referred to an [sic] medical evaluation board and physical evaluation board."  AR at 447.

The ABCMR also noted that:

> Although the applicant provided copies of his medical records, there is no available evidence of any medical examinations, limiting physical profiles, or any indication from his chain of command that he was unable to perform his military duties due to a medical condition.  In fact, his last NCOER shows he was performing his duties in an excellent and satisfactory manner.

AR at 448.  And so, the ABCMR denied plaintiff's application.  AR at 445-49.

On May 11, 2015, plaintiff filed a request for reconsideration of the ABCMR's denial decision.  AR at 20.  Similar to his prior requests for correction of his military records before the ABCMR, plaintiff requested that his "military records be presented to and reviewed by a Medical Review Board."  AR at 20.  Plaintiff submitted the record before the ABCMR when the board previously denied his application, as well as three supporting memoranda from soldiers that served with plaintiff.  AR at 11-12.  Plaintiff asserted in his request for reconsideration that he suffered from "an unexplainable Epileptic Disorder" and that he had been placed on profile several times throughout his final four years of service.  AR at 20.

On April 12, 2016, the ABCMR denied plaintiff's request for reconsideration.  AR at 2-4.  In making this determination, the ABCMR reviewed Army Regulation 40-501, which the board described as providing:

> [S]tandards for induction, enlistment, appointment, retention, and related policies and procedures.  Chapter 3 gives the various medical conditions and physical defects which may render a Soldier unfit for further military services and which fall below the standards required for Soldiers.
>
>> a.  Paragraph 3-30 (Neurological disorders) outlines the causes for referral to an MEB and lists (in subparagraph i) seizure disorders and epilepsy.

AR at 12.  The ABCMR further considered Chapter 3, paragraph 3-30(1)-(7) of the current version of Army Regulation 40-501, dated December 22, 2016.  AR at 12-13.  The ABCMR also examined Army Regulation 635-40, paragraph 3-1, which provides, in relevant part, that:

> [T]he mere presence of impairment does not, of itself, justify a finding of unfitness because of physical disability.  In each case, it is necessary to compare the nature and degree of physical disability present with the requirements of the duties the Soldier reasonably may be expected to perform because of his or her office, rank, grade or rating in such a way as to reasonably fulfill the purposes of his/her employment on active duty.

Army Regulation 635-40, 3-1 (Sept. 1. 1990); AR at 14.

In addition, the ABCMR considered title 10, United States Code, chapter 61, and determined that this statute provides for "disability retirement or separation for a member who is physically unfit to perform the duties of his office, rank, grade or rating because of disability incurred while entitled to basic pay."  *Id*.  The ABCMR also considered Army Regulation 635-40, paragraph 2-9, which provides that a unit commander will "refer a Soldier to the servicing MTF [Medical Treatment Facility] for medical evaluation when the Soldier is believed to be unable to perform the duties of his or her office, grade, rank, or rating . . . ."  *Id*.  Finally, the ABCMR considered Army Regulation 601-210; Army Regulation 635-200, chapter 4; Army Regulation 600-9; and Army Regulation 15-185.  AR at 14-15.

After reviewing these legal standards, the ABCMR examined the evidence regarding plaintiff's medical history and determined that:

> A review of the available records failed to reveal evidence that the applicant had an unfitting medical condition because of physical disability that prevented him from performing his duties in his MOS [military occupational specialty] on a permanent basis.  The review also failed to reveal that he was referred to the PDES [the Army's Physical Disability Evaluation System] for an MEB/PEB [Physical Evaluation Board].

AR at 11; *see* AR at 16-17.  Specifically, the ABCMR noted that plaintiff underwent a physical examination in April 1999 for the purpose of involuntary separation, during which "the examining physician found the applicant qualified for separation upon conclusion of a General Surgery evaluation."  AR at 16.  The ABCMR further noted that on March 24, 2000:

> [T]he applicant was seen by a neurologist for a status post epileptic seizure that occurred on 27 February 2000.  The evidence of record shows the applicant had a

> 4-year history of (4 to 5) intermittent episodes.  After the second episode, <u>he was evaluated and placed on medication (Dilantin)</u>.

*Id.* (emphasis existing).  The ABCMR determined that:

> The evidence of records shows that seizures by themselves are not disqualifying unless they are manifestations of epilepsy. It also shows epilepsy is disqualifying <u>unless the Soldier can be maintained free of clinical seizures of all types by nontoxic doses of medications</u>.  Moreover, evaluation by a neurologist is routinely sufficient for such determination.

AR at 16 (emphasis existing).

In addition, the ABCMR found that "[t]here is no evidence of record that shows the applicant was unable to perform his military duties (within the limits of his <u>temporary physical profiles</u>) due to any of his medical conditions."  AR at 16.  The ABCMR further determined that:

> The physical examination that the applicant provides, that was completed on 28 December 2000, was completed more than four months after his discharge from the RA [Regular Army].  The examining physician confirmed (at that time) the applicant is "maintained seizure-free with medication."

AR at 17 (emphasis existing).  The ABCMR also determined that the record evidence does not demonstrate that plaintiff was diagnosed with sleep apnea during his military service.  *Id.*  And so, the ABCMR concluded that:

> There is no evidence of record that shows the applicant's medical conditions (individually or in combination) were found to be <u>medically unfitting</u> under the provisions of AR 40-501 or by the physicians who examined the applicant during his separation processing for his discharge from active duty.

*Id.* (emphasis existing).

Plaintiff, alleging error, seeks judicial review of the ABCMR's denial decisions.

## B.  Procedural Background

Plaintiff filed the complaint in this matter on September 9, 2016.  *See generally* Compl. On January 13, 2017, the government filed the administrative record in this matter.  *See generally* AR.  On January 13, 2017, the government filed a motion to dismiss or, in the alternative, for judgment upon the administrative record, as well as a regulatory appendix.  *See generally* Def. Mot.; Def. App.

On February 14, 2017, plaintiff filed a cross-motion for judgment upon the administrative record and an opposition to the government's motion. *See generally* Pl. Initial Mot. Plaintiff also filed an appendix to his motion. *See* Pl. App. On February 15, 2017, plaintiff filed a corrected cross-motion for judgment upon the administrative record and an opposition to the government's motion. *See generally* Pl. Mot. On March 31, 2017, the government filed a reply in support of its motion to dismiss or, in the alternative, for judgment upon the administrative record, and a response to plaintiff's cross-motion for judgment upon the administrative record. *See generally* Def. Reply. On April 10, 2017, plaintiff filed a reply in support of his cross-motion for judgment upon the administrative record. Pl. Reply.

These matters having been fully briefed, the Court decides the pending motions.

## III.   LEGAL STANDARDS

### A.  Jurisdiction

The Court's jurisdiction is defined by the Tucker Act, 28 U.S.C. § 1491, which grants jurisdiction over claims:

> [A]gainst the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). Because the Tucker Act "does not confer any substantive rights upon a plaintiff," a plaintiff also "must establish an independent substantive right to money damages from the United States–that is, a money-mandating source within a contract, regulation, statute or Constitutional provision–in order for the case to proceed." *Volk v. United States*, 111 Fed. Cl. 313, 323 (2013) (citing *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1306 (Fed. Cir. 2008)).

In this action, plaintiff asserts that he is entitled to military disability pay pursuant to 10 U.S.C. §§ 1201 and 1203. Compl. ¶¶ 29-34; 10 U.S.C. §§ 1201, 1203 (2012). The Federal Circuit has recognized that Sections 1201 and 1203 are money-mandating sources of law. *Chambers v. United States,* 417 F.3d 1218, 1222 (Fed. Cir. 2005) (holding that 10 U.S.C. § 1201 is a money-mandating statute); *cf. Doe v. United States*, No. 08-246C, 2009 WL 260967, at *7-8

(Fed. Cl. Jan. 30, 2009).  And so, the Court possesses jurisdiction to consider plaintiff's claims.
*Id*.

### B.  RCFC 52.1

Unlike summary judgment under RCFC 56, the existence of genuine issues of material
fact does not preclude a grant of judgment upon the administrative record under RCFC 52.1.
*Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011).  Rather, the Court's inquiry is
whether, "given all the disputed and undisputed facts, a party has met its burden of proof based
on the evidence in the record."  *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131
(2006); *see also Bannum v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).

In reviewing challenges to military corrections board decisions under RCFC 52.1, the
Court is "'limited to determining whether a decision of the [c]orrection [b]oard is arbitrary,
capricious, unsupported by substantial evidence, or contrary to applicable statutes and
regulations.'"  *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting
*Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983)); *see also Volk*, 111 Fed. Cl. at 325
(citing *Arens v. United States*, 969 F.2d 1034, 1037 (Fed. Cir. 1992)).  "Thus, correction board
decisions 'may be reviewed for failure to correct plain legal error committed by the military,'
including 'the military's violation of statute, or regulation, or published mandatory procedure, or
unauthorized act.'"  *Volk*, 111 Fed. Cl. at 325 (quoting *Dodson v. United States*, 988 F.2d 1199,
1204 (Fed. Cir. 1993)).

## IV.   LEGAL ANALYSIS

The parties have filed cross-motions for judgment upon the administrative record,
pursuant to RCFC 52.1, on the issue of whether the ABCMR erred in denying plaintiff's military
benefits claim.  *See generally* Pl. Mot.; Def. Mot.  In its motion for judgment upon the
administrative record, the government argues that the ABCMR's denial decisions are supported
by the substantial record evidence and in accordance with law because: (1) the board's finding
that plaintiff's military records do not support a records correction is supported by the record
evidence; (2) the limited records provided by plaintiff do not support a correction of his military
records; and (3) plaintiff has waived any claim regarding a shoulder condition and hernia
condition.  Def. Mot. at 25-33.

10

In his cross-motion, plaintiff counters that the ABCMR's denial decisions are unreasonable and contrary to law, because: (1) plaintiff is not required to be found unfit to perform military duties at the time of discharge, to qualify for medical discharge processing; (2) the ABCMR failed to address whether plaintiff's shoulder and hernia conditions resulted in plaintiff's unfitness; and (3) the ABCMR relied upon the incorrect Army regulation in reaching its decision to deny plaintiff's claim.  Pl. Mot. at 7-9.

For the reasons discussed below, the administrative record shows that the ABCMR's denial decisions are supported by the substantial evidence in the administrative record and are in accordance with applicable law.  And so, the Court **GRANTS** the government's motion for judgment upon the administrative record and **DENIES** plaintiff's cross-motion for judgment upon the administrative record.

### A.   The ABCMR's Decisions Are In Accordance With Applicable Law And Supported By Substantial Evidence

The administrative record demonstrates that the ABCMR's decisions to deny plaintiff's military benefits claim are supported by the substantial evidence in the administrative record and are in accordance with the applicable statutes and military regulations.  And so, the Court will not set aside the ABCMR's sound decisions.  *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (holding the Court will not disturb the decision of the ABCMR unless it was "arbitrary, capricious, contrary to law, or unsupported by substantial evidence").

As an initial matter, a review of the administrative record makes clear that the ABCMR appropriately considered the statutes and military regulations that are relevant to plaintiff's military benefits claim.  As the ABCMR correctly observed in the board's October 9, 2014, and April 12, 2016, denial decisions, plaintiff's claims are governed by 10 U.S.C. §§ 1201 and 1203 and Army Regulations 635-40 and 40-501.  AR at 5-7, 12-13, 445-49.  In this regard, Section 1201 provides that, upon the Secretary's determination that a service member "is unfit to perform the duties of the member's office, grade, rank or rating because of physical disability incurred while entitled to basic pay," the service member may retire for disability prior to serving twenty years.  10 U.S.C. § 1201(a).  Similarly, Section 1203 provides that, if the Secretary determines that a service member "is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay . . . the member

may be separated from the member's armed force, with severance pay . . . ."  10 U.S.C.
§ 1203(a).

In addition, the United States Court of Appeals for the Federal Circuit has recognized the
military's disability retirement process under these statutes to require that:

> Where a service member is injured in the line of duty, he may claim . . . disability
> payments, including disability retirement, if the disability is permanent.  A claim
> for disability is first considered by a Medical Evaluation Board ("MEB"), which
> reviews the individual's medical records to determine the nature of the disability.
> Then, if the disability is found to be permanent, the issue of disability retirement is
> referred to a Physical Evaluation Board ("PEB"), which provides a formal fitness
> and disability determination.  If the PEB finds the service member unfit for duty
> and permanently disabled, it assigns a disability rating.  If the rating is 30% or more,
> the PEB can recommend disability retirement.  If the rating is less than 30%, the
> PEB can recommend discharge with the service member's having the option to
> receive a lump-sum disability severance payment.

*Barnick*, 591 F.3d at 1375 (summarizing the Air Force disability retirement process) (citing 10
U.S.C. §§ 1201, 1203; *Wall v. United States*, 582 F.3d 1358, 1365-66 (Fed. Cir. 2009)).  The
Army has also promulgated regulations to determine when the Army should refer a service
member to a MEB.

Specifically, Army Regulation 635-40, as in effect on the date of plaintiff's discharge
from the Army, provides, in relevant part, that:

> To ensure all soldiers are physically qualified to perform their duties in a reasonable
> manner, medical retention qualification standards have been established in AR 40-
> 501, chapter 3 . . . .   These guidelines are used to refer soldiers to a [Medical
> Evaluation Board].

Army Reg. 635-40 (Sept. 1, 1990).  Army Regulation 40-501, as in effect on the date of
plaintiff's discharge from the Army, further provides, in relevant part, that:

**3–30. Neurological disorders**

> The causes for referral to an MEB are as follows: . . . .

>> *i.* Seizure disorders and epilepsy. Seizures by themselves are not
>> disqualifying unless they are manifestations of epilepsy.  However, they
>> may be considered along with other disabilities in judging fitness. In
>> general, epilepsy is disqualifying unless the soldier can be maintained free
>> of clinical seizures of all types by nontoxic doses of medications.  The

following guidance applies when determining whether a soldier will be referred to an MEB/PEB.

> (1) All active duty soldiers with suspected epilepsy must be evaluated by a neurologist who will determine whether epilepsy exists and whether the soldier should be given a trial of therapy on active duty or be referred directly to an MEB for referral to a PEB. In making the determination, the neurologist may consider the underlying cause, EEG findings, type of seizure, duration of epilepsy, family history, soldier's likelihood of compliance with a therapeutic program, absence of substance abuse, or any other clinical factor influencing the probability of control or the soldier's ability to perform duty during the trial of treatment . . . .

> (4) If seizures recur beyond 6 months after the initiation of treatment, the soldier will be referred to an MEB . . . .

Army Reg. 40-501, 3-30(i) (Feb. 27, 1998).

And so, Army Regulation 40-501 requires that a neurologist determine whether a referral to a MEB is warranted, or if a trial of medical therapy while remaining on active duty is more appropriate. *Id.* This regulation also requires that a neurologist refer a service member to a MEB if a seizure recurs beyond six months after the treatment of the seizure with medication. *Id.*

In light of the aforementioned legal standards, the record evidence demonstrates that the ABCMR reasonably determined that there was no evidentiary basis for either correcting plaintiff's military records, or referring plaintiff to a MEB for several reasons. *Id.* First, the record evidence shows that the ABCMR properly determined that plaintiff was not eligible for referral to a MEB, because plaintiff had not been referred to a MEB by a neurologist. AR at 16. It is undisputed that the relevant Army regulations provide that "[a]ll active duty soldiers with suspected epilepsy must be evaluated by a neurologist who will determine whether epilepsy exists and whether the soldier should be given a trial of therapy on active duty or be referred directly to an MEB for referral to a PEB." Army Reg. 40-501, 3-30(i) (Feb. 27, 1998). As the ABCMR correctly determined in this case, plaintiff's military records make clear that plaintiff was evaluated by a neurologist in August 1996, and that the neurologist decided to treat plaintiff's seizures with medication, rather than to refer plaintiff to a MEB. AR at 16-17, 403. Given this undisputed record evidence, the ABCMR correctly determined that plaintiff was not

entitled to be referred to a MEB under Army Regulation 40-501, because he had not been referred to a MEB by a neurologist. *See* Army Reg. 40-501, 3-30(i); AR at 5-17, 445-49.

Second, the record evidence also demonstrates that the ABCMR correctly determined that plaintiff is not entitled to a referral to a MEB because he "can be maintained free of clinical seizures of all types by nontoxic doses of medications." AR at 228-29; Army Reg. 40-501, 3-30(i) (Feb. 27, 1998). As discussed above, Army Regulation 40-501 provides that, generally, "epilepsy is disqualifying unless the soldier can be maintained free of clinical seizures of all types by nontoxic doses of medications." Army Reg. 40-501, 3-30(i) (Feb. 27, 1998). The record evidence here shows that, after plaintiff experienced two seizures in 1996, he was referred to a neurologist who prescribed a regimen of 300 milligrams per day of Dilantin. AR at 399, 403. Thereafter, the evidentiary records also show that plaintiff experienced one "epileptic seizure" in February 2000, and that during a subsequent examination by a neurologist in March 2000, the neurologist determined that plaintiff "had been taking only 100 mg [per day of Dilantin] claiming that he had never been told to increase it to 300 mg/d." AR at 265.

The record evidence further shows that, after plaintiff began taking the correct dosage of his seizure medication, plaintiff has been "maintained [seizure] free with medication." AR at 228-29. Given this evidence, the ABCMR correctly determined that plaintiff could be "maintained free of clinical seizures of all types by nontoxic doses of medications," and, thus, that plaintiff was not entitled to a referral to a MEB. Army Reg. 40-501 (Feb. 27, 1998); AR at 16-17.

Plaintiff's argument that the ABCMR erred in denying his military benefits claim because plaintiff experienced a recurrence of seizures six months after the initiation of treatment is also belied by the record evidence. Compl. ¶ 24; *see also* Army Reg. 40-501, 3-30(i)(4) (Feb. 27, 1998). Plaintiff correctly argues that paragraph 3-30(i)(4) of Army Regulation 40-501 requires that he be referred to a MEB "[i]f seizures recur beyond 6 months after the initiation of treatment . . . ." Army Reg. 40-501, 3-30(i)(4) (Feb. 27, 1998). But, the administrative record in this case makes clear that plaintiff did not experience any documented seizures after he began taking the correct dosage of Dilantin in March 2000. *See* AR at 228-29, 265. In fact, as the government notes in its motion, there is no evidence in the record to show that plaintiff was ever diagnosed with epilepsy by a neurologist, or with having any unfitting medical condition that

would preclude military service.  Def. Mot. at 29; AR 265.  And so, the record is simply devoid of any evidence to indicate that plaintiff is entitled to a referral to a MEB under the applicable Army regulations.[3]  AR at 16-17.

Lastly, the record evidence also shows that the ABCMR's reliance upon a version of Army Regulation 40-501 that was not in effect at the time of plaintiff's separation from the Army was harmless error.  *See* AR at 8-9; Army Reg. 40-501, 3-30(i) (Feb. 27, 1998); Army Reg. 40-501, 3-30(i) (Dec. 22, 2016).  In this regard, the parties agree that the ABCMR erred by relying upon a version of Army Regulation 40-501 that became effective on December 22, 2016–several years after plaintiff separated from the Army–in considering plaintiff's military benefits claim.  Pl. Mot. at 8-9; Def. Reply at 6-8.  While the board's reliance upon this version of Army Regulation 40-501 was erroneous, the error is, nonetheless, harmless.

The record evidence shows that the ABCMR's reliance upon a version of Army Regulation 40-501 that was not in effect at the time plaintiff separated from the Army neither affected the outcome of plaintiff's claim, nor prejudiced plaintiff.  *See Guarnieri v. United States*, No. 14-305C, 2015 WL 6781066, at *3 (Fed. Cl. Nov. 5, 2015) ("If agency error is found, but the error was harmless rather than prejudicial, it was not critical to the decision or outcome and will thus not be the basis for overturning an agency's action.") (citing *PDK Labs, Inc. v. United States Drug Enforcement Administration*, 362 F.3d 786, 799 (D.C. Cir. 2004)).  Indeed, as discussed above, the version of Army Regulation 40-501 that was in effect at the time that plaintiff separated from the Army in August 2000 makes clear that plaintiff is not entitled to a correction of his military records, or to a referral to a MEB.  While the ABCMR relied upon a different version of this regulation in its reconsideration decision, the board reached the same conclusion that the Court reaches here–that plaintiff is not entitled to a correction of his military records, or to a referral to a MEB.  AR at 5-17.  Given this, the outcome for plaintiff under either version of this regulation is the same–plaintiff is not entitled to the relief that he seeks.  And so, the ACBMR's reliance upon a version of Army Regulation 40-501 that was not in effect at the

---

[3] As the ABCMR correctly observed in its April 7, 2016, denial decision, there is also no evidence in the record to indicate that plaintiff was unable to perform his military duties.  AR 15-17, 67, 70, 79, 209.  Nor is there any evidence in the record to show that plaintiff had been diagnosed with either "obstructive sleep apnea, sleep-disordered breathing, or depression," during his military service.  AR at 17.

time that plaintiff separated from the Army does not warrant a remand of this matter to the ABCMR.[4]  *Guarnieri*, 2015 WL 6781066, at *3.

### B.  The ABCMR Appropriately Considered The Evidence Provided By Plaintiff

The record evidence also shows that the ABCMR properly considered the limited medical records and other evidence put forward by plaintiff to support his military benefits claim.  Specifically, the administrative record shows that, on January 10, 2014, the ABCMR dismissed plaintiff's initial application for correction of his military records without prejudice, because the board determined that it had insufficient records to proceed with a review due to an inability to obtain plaintiff's military records from the National Archives and Records Administration, or to review plaintiff's records in the Interactive Personnel Electronic Records Management System.  AR at 780-81.  With the full knowledge of this evidentiary impediment to his claim, plaintiff later renewed his application to the ABCMR.  AR at 451.  Thereafter, the ABCMR considered the following evidence provided by plaintiff:  an Army Review Boards Agency letter, dated January 10, 2014; plaintiff's DD Form 149 (Application for Correction of Military Record), dated December 23, 2013; an NCOER for the period May 1995 through January 1996; additional military medical records; a Delta Waves Sleep Disorder and Research Center letter, dated January 10, 2013; Progress Notes, dated January to November 2013; and three supporting memoranda from soldiers that served with plaintiff.  AR at 11-12, 446, 453-779.

Plaintiff's claim that the ABCMR erred by relying upon the 1996 Non-Commissioner Officer Report that he provided to the board is belied by the record evidence.  Compl. ¶¶ 22-23 (citing AR at 448).  Indeed, the record evidence makes clear that plaintiff provided this particular

---

[4] Subparagraphs 3-30(i)(1) and (4) of the current version of Army Regulation 40-501 are substantively identical to the same provisions in the version of this regulation that was in effect on the date of plaintiff's separation from the Army.  Army Reg. 40-501, 3-30(i)(1), (4) (Feb. 27, 1998); Army Reg. 40-501, 3-30(i)(1), (4) (Dec. 22, 2016).  As the parties acknowledge, subparagraph 3-30(i)(7) of the regulation has been revised since plaintiff separated from the Army to provide that:

> Recurrent pseudoseizures are most commonly seen in the presence of epilepsy.  As such, they do not meet the standard under the same rules as epilepsy.  While each case may be individualized, their evaluation by a neurologist should be routinely sufficient.

Army Reg. 40-501 (Dec. 22, 2016).  But, plaintiff does not rely upon this provision in his complaint.  *See generally* Compl.  Also, to the extent that plaintiff now seeks to rely upon subparagraph (7), such reliance is misplaced, because plaintiff's treating neurologist did not refer him to a MEB.  *See* AR at 228, 403.

report to the ABCMR and that the report shows that plaintiff satisfactorily performed his military duties during the period May 1995 to January 1996.  AR at 509-10; AR at 451.  Plaintiff also acknowledges that the subject NCOER is the only such report that was available to the ACBMR to determine whether plaintiff was unable to perform his military duties due to a medical condition.  *See generally* Pl. Mot.; Pl. Reply; AR at 448, 509-10.  Given this, the evidentiary record demonstrates that it was appropriate−and indeed, necessary−for the ABCMR to rely upon this report in evaluating plaintiff's military benefits claim.

In addition, plaintiff's claim that the ABCMR erred in finding that the record did not include "evidence of any medical examinations, limiting physical profiles, or any indication from his chain of command that [plaintiff] was unable to perform his military duties due to a medical condition" is equally misguided.  Compl. ¶ 23.  A review of the administrative record makes clear that there is no evidence in the record of any medical examinations, or other evidence, finding that plaintiff was unable to perform his military duties due to a medical condition.  AR at 448; 453-779.  Plaintiff also points to no evidence to show that he could not perform his military duties at the time of his separation from the Army.  *See generally* Pl. Mot.; Pl. Reply.  Indeed, while the administrative record does contain evidence indicating that plaintiff was placed on several temporary physical profiles while serving in the Army, this evidence does not demonstrate that plaintiff was unable to perform his military duties within the limits imposed by these temporary physical profiles.  *See*, *e.g*., AR at 67, 70, 79, 209.  And so, again, the record evidence shows that plaintiff cannot demonstrate that he was unfit for military service during his military tenure.

## C.  Plaintiff Has Waived His Claims Based Upon Shoulder And Hernia Conditions

As a final matter, the record evidence also demonstrates that plaintiff has waived any challenge to the ABCMR's denial decisions based upon his shoulder or hernia conditions.  This Court has long held that, "under the waiver doctrine, issues and arguments not made before the relevant military correction board . . . are deemed waived and could not be raised in a judicial tribunal."  *Christian v. United States*, 46 Fed. Cl. 793, 802 (2000) (citations omitted).  And so, if plaintiff did not raise his shoulder and hernia conditions as grounds for unfitness before the ABCMR, he may not pursue such claims in this litigation.

Here, the record evidence makes clear that plaintiff did not raise his shoulder condition as a ground for unfitness during the proceedings before the ABCMR.  In fact, plaintiff did not even mention a shoulder condition in his request for relief before the ABCMR.  AR at 450; *see also* AR at 20.

Plaintiff, nonetheless, points to a memorandum attached to his May 11, 2015 application for correction of military records to show that he raised a shoulder condition as a ground for unfitness before the ABCMR.  Pl. Mot. at 7-8 (citing AR at 22, 210).  This memorandum provides, in relevant part, that:

> I suffered shoulder dislocations to my left shoulder and significant strain to tendons and muscles to my right shoulder region. . . . My shoulder had become so unstable from many epileptic episodes that my shoulder would dislocate during the lightest of physical training (PT) such as jumping jacks an on several occasions my shoulder dislocated during the night while I was sleeping.  Both my epilepsy and shoulders are designated as service connected injuries, yet at no point during my military service did my any of my commanders (battery, battalion, or brigade) sit down with me to discuss what I was going through.

AR at 22.  Plaintiff also points to a handwritten note, dated May 1999, that he attached to his January 2014 application to correct his military records, which states that:

> During my ETS physical the physician diagnosed me with depression.  He also noted that I was never referred for further evaluations for my epilepsy and shoulder as I should have been.  He documented that I "could not" do push ups (but I was never given a profile (P3)) and I cannot do overhead work.

AR at 210 (emphasis existing); *see also* AR at 462 (same document included with plaintiff's January 27, 2014, application for correction of military record).  But, neither of these documents demonstrates that plaintiff raised his shoulder injury as a ground for unfitness.  And so, plaintiff has waived any claim related to his shoulder injury.  *See Parks v. United States*, 127 Fed. Cl. 677, 680 (2016) (holding that plaintiff waived claims that he failed to raise in petition before the relevant military correction board).

The aforementioned documents similarly fail to demonstrate that plaintiff raised his hernia condition as a ground for unfitness before the ABCMR.  In fact, neither document cited by plaintiff mentions a hernia condition, and plaintiff points to no other evidence in the administrative record to demonstrate that he raised a hernia condition as a ground for unfitness

before the ABCMR.  *See generally* Pl. Mot.; Pl. Reply.  Given this, plaintiff has also waived this claim.  *See Parks,* 127 Fed. Cl. at 680.

## V.    CONCLUSION

In sum, plaintiff has failed to demonstrate that the ABCMR's decisions to deny his request for disability compensation under Sections 1201 and 1203 are unreasonable, or contrary to law.  Rather, the substantial record evidence in this case demonstrates that the ABCMR's denial decisions are supported by the record evidence and are in accordance with the applicable federal statutes and military regulations.  The substantial record evidence further demonstrates that the ABCMR appropriately reviewed the available medical and military records in reaching the board's denial decisions, and that plaintiff has waived any claims based upon his shoulder or hernia conditions.

And so, in view of the foregoing, the Court:

1.   **GRANTS** the government's motion for judgment upon the administrative record, and

2.   **DENIES** plaintiff's cross-motion for judgment upon the administrative record.

The Clerk is directed to **ENTER** judgment in favor of the government.

No costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge